Good morning, Eric Stemping appearing on behalf of the appellant Shannon Roth. It's our position that this case is a relatively, first I'd like to point out I asked for three minutes to be reserved for rebuttal. This case from our position is a relatively straightforward application of this court's prior holding in McKenna v. Edgell. This is a case where my client suffered a seizure, called for medical help, response came from a police officer. The police officer, as I will demonstrate, engaged in what, at least as a question of fact as to whether or not it was law enforcement capacity versus a medical responder capacity. And under McKenna's holding, that specifically is an issue that a reasonable jury could then find that there was a clearly established right to be free from that kind of conduct. And in this instance, his actions were objectively unreasonable. With regard to the clearly established prong, the McKenna case was very clear that if the responding officer is acting in a law enforcement capacity, then there is this right to be free from a seizure or an unreasonable seizure. So the question becomes whether or not Officer Viviano was acting as a law enforcement capacity. The facts in this case are similar to the McKenna facts, I understand, and I acknowledge that there were some additional facts in the McKenna case that aren't present in this particular case. In McKenna, that particular officer did some other things, including running her license plate, or his license plate, the plaintiff in that case was a male, running his license plate, asking about whether or not there had been some abuse in the house, things of that nature. But when you look at the language of McKenna, so this is just an application of what the court held in McKenna, and the first thing I'd like to talk about is the defendant raises the issue that they say that McKenna, this language that I'm relying on, is merely dicta and is not binding on the court, a proposition for which I disagree. McKenna, when the court wrote the opinion in McKenna, the court specifically looked at this and said that they were asked by the defendant in that case to determine whether there was qualified immunity, and they specifically said that that issue, that issue of qualified immunity is specifically dependent on whether he was acting in a law enforcement capacity. They held that they must determine whether there are any facts that a reasonable jury can conclude that he was acting as a law enforcement officer. So these are absolutely essential issues, these factual determinations that were made or the factual observations that were made by the court were absolutely essential to its ultimate holding, therefore it's not dicta. These things that we rely on were the essence of McKenna's holding. McKenna did hold that generally it's a jury question, that they said it's a jury question, that if the officer, if there's factual disputes as to what the officer was engaged in, that that's an issue for the jury to decide. I made a specific reference that there was an issue with regard to whether it should be the court or the jury and came down squarely on the side that this is a jury issue, even though it may be application of law to fact, it's still an issue that the jury has to decide. So looking at sort of the similarities, I think, with the McKenna case, the court there said that, you know, you have an officer who comes in and starts asking immediately about drug use, drug overdose, starts rifling through personal property, through personal effects, making certain insinuations by the way that he's acting and talking. That's the exact same thing we had in this case, the testimony of both the father and the son of my client, both testified that that's exactly how the officer acted in this case, immediately started coming in, asking about drug use, drug abuse, overdose. A medical person responds to an emergency call and the person as to whom he is responding is having seizures. Wouldn't a medical person need to ask some of those questions to try and figure out what he's dealing with? That is correct. So why does that make that evidence that he was acting in a law enforcement capacity? Well the holding in McKenna was specifically that those acts alone, before we get to the other things that were going on, they said would be equally suggestive of law enforcement versus medical response. So my first response is if it's equally suggestive, if it's a tie, where you say, well this could be law enforcement, this could be medical response and it's equal, that would not be like a tie goes to the defendant, the tie goes to the jury. The jury's got to make a determination as to that, taking in the totality of the circumstances. But even more so, in this particular case, you have the additional aspect of the husband's testimony where he said that we were being treated like criminals. That was his testimony. He said this officer came in and treated my wife and I like criminals. Where in that instance, you may say, well that's conclusory and that's, you know, maybe that's subjective of some nature, but really it's not because he's making this conclusion based on his objective viewing of what's going on in the situation. We as human beings communicate in many different ways. We communicate with the words we use and the acts we take, but we also communicate by tone of voice, we communicate by facial expressions, body language, guttural sounds, all the things that we all do as humans that can communicate certain things. The husband is viewing the situation, so this is three years ago, he says, I'm looking at this whole situation, everything that this guy's doing is treating me like a criminal. The defendant says, no, I was only acting as a medical first responder, I was doing all this for medical purposes only. But again, McKenna specifically says, it's not a subjective inquiry, it's an objective inquiry. So his statement that- Can you uniform this policeman? Yes. It seems to me if a policeman says, stand over here while I look at this person, lots of people will say, well, I was being treated like a criminal. Correct, but- But that wouldn't be enough, would it? No, that would- You're saying it's an objective determination, right? Right. Yeah. But the evidence you're citing is almost purely subjective. Well I would disagree with that. The objective evidence is his questioning about the drug use, the drug abuse, the rightful inter- That's a tie. Right? Right, and we're here on a summary judgment appeal, so my point is in that, if that was all we had, I would say, yeah, then I still think that goes to the jury. That's still what McKenna has said, it's a tie. So then, I don't know how you grant summary judgment when it equally could be one or the other. I'm not sure whether they're saying that's a factual tie, as that doesn't get us very far towards answering the question whether it's medical or not. Well right, and I think there's a tie in between whether he's acting in law enforcement capacity and the actions he's taking and whether those are objectively reasonable. Because generally speaking, when you respond to a police call where the only thing that's alleged is a medical situation, and they come in and there's no affirmative indication that the police are doing anything more than treating it as a medical indication, other than the I just wonder if that's enough. Well, I don't believe it's... That puts... That seems to me would mean that we're going to try to keep policemen from responding to medical situations. But you end up having... Wait for the other people and not go immediately when you've got police there who can be helpful. And if he was being helpful, I would agree. But he's not. He handcuffs her face down on the stretcher... But how... I don't... There's no way to say how putting somebody face down on a stretcher, handcuffed, somehow protects her or anybody else. I guess it could protect somebody else if she's trying to punch or kick somebody. But why does that make what he's doing a function of his law enforcement capacity? It doesn't. That goes with the objectively reasonable. I think it's conflated a little bit, but his actions before that are what lead to the conclusion it was law enforcement. So when he handcuffs her, that's a law enforcement act. So he seized her without any probable cause at that point. How else should he have kept her on the stretcher? Now, I know your clients say he shouldn't have done anything, but they called for help. Did they really mean don't do anything? No. You have EMTs that are there. At the time she's placed on the stretcher, there's EMTs. He didn't bring a stretcher. They did. They have four-point restraints on these stretchers, and they did in fact restrain her in these four-point restraints on the stretcher after the fact. There's no evidence the EMTs asked him to step in. There's no evidence that anything happened where there was some outside force that said he needs to jump in. This is a person who's acting in a law enforcement capacity as he comes in and asks these questions. He then handcuffs her, he says for medical purposes because I needed to be able to let them transport her, but there's no evidence other than his own testimony to support that, which is a subjective intent. That's the point. His testimony is subjective. He's saying that's why I did it, but that's not what we look at. We look at the objective evidence, which is he's acting in this manner, and then he handcuffs her in a manner that has no medical purpose whatsoever. In jumping ahead to the objective reasonableness portion of it... Do you have anyone saying that cuffing her behind her back would serve no medical purpose? No, but I think that's just an argument I'm making based on the facts. You have somebody who says they're falling off a stretcher. I don't see common sense how putting them on the back is going to stop them from falling off of the stretcher. But it would stop them from fighting, which would contribute to the falling off of the stretcher. Well, I'm not sure it would stop them from fighting. They can still flail around with their arms handcuffed behind their back. They can still work? They could still fight and roll around. They can still move. Are you ever, through questioning or anything else, establish whether she could still move around after they put the straps around her? Well, once they strapped her... There's handcuffing and then there's strapping. The two different things happen when she's on the stretcher. Once she's in the four-point restraints, no, she can't move. Once she's in the four-point restraints... Four-point restraints, meaning the strap? Right. So the stretcher has straps, leather straps that attach to the side of it. They put them on the wrist and the ankles. Is that too? No. This is just the handcuffing. This case is only about the handcuffing. And how did the handcuff impact her journey when she was already restrained? She was handcuffed first and then strapped. And that's not clear in the record or factually. I'm not sure how, because the officer testified that she was continually handcuffed all the way to the hospital. But the medical records show that she was strapped to the stretcher. So there is some sort of factual disconnect here as to exactly what happened. I thought you were claiming that she was handcuffed until she got to the hospital. That is what the police officer testified. That is what the defendant, Officer Viviano, testified to that. Okay, but I thought that was one of your claims, that there was no need for her to continue to be cuffed once she was strapped. Yes, that is correct. Our whole point is the handcuffing from the point when he did it when she was on the stretcher all the way to the hospital. That is the nature of our claim. That is correct. And that is correct, that once she's been strapped, then there's definitely no need to continue to have her handcuffed at that point. Thank you. Good morning. Douglas Curlew, appearing this morning on behalf of Officer Viviano. I went to my cardiologist Monday afternoon. The first thing out of his mouth was, what medications are you taking? It's a medical question. He asks me that first thing every time I go to his office. The last thing that we want is to have police officers, as I think the panel already noticed, afraid to begin to offer assistance to find information when they go to a medical emergency. Consider the situation where a person is conscious when they arrive, they have a chance to ask them what medications they're taking, and then they're not responsive by the time regular paramedics arrive. Okay, but here, basically, the officers didn't back off when the EMTs took over, right? Well, the EMTs weren't able to take over because they were struggling. Even Mr. Saxton, the son, says, I carried mom down. She was struggling. She didn't want to go. She's fighting everybody because she doesn't want to go. The officer had to step in because the EMTs couldn't do the job of getting her on the gurney and getting her to the hospital herself. Time, delay is life. You've got to get people to the hospital. After, once they carried her out and they decided that she was being combative or whatever, we really don't know what was going on, why would they continue to have her cuffed once she's strapped in? Well, I mean, she was cuffed before they strapped. They get her down. They get her finally strapped. Because remember, the son, excuse me, not the son, the husband testifies. She got off the gurney again a second time after she was handcuffed. So they hadn't... She was cuffed. Right. Not strapped. Right. Right. So he handcuffed her first to try to get her into a position where they could get her strapped onto the gurney. Now, why he left the cuffs on for the trip after she was strapped, I don't know. But it really doesn't make a difference. Why? If she's strapped and cuffed, she's not moving anyway. I know. But instead of not moving because of strap restraints, you have somebody who's injuring their wrists because of these cuffs. It may be. I would expect the situation was she's on the gurney. They're going. He doesn't want to step in and say, well, wait while I remove the cuffs before you go. Like I say, delay is life. You've got to get people to the hospital. Where the first thing they're going to ask is, did anybody know what medications she's on? I would say what I want to focus on, and I'll be very brief because I think the briefs were thorough, and unlike the past case where you had to reconcile hundreds of years of law, here you've only got really two cases to try to reconcile. As far as the objective reasonableness and the immunity, he doesn't have to make the best decision. He doesn't have to make the right decision. He has to make a reasonable decision. And in the circumstance where you've got this person struggling, where you want to get them to the hospital as quickly as possible, you want to help the paramedics, it was not an unreasonable decision to handcuff her to the gurney before they were able to get those straps on her and get her in a position where she could go. You don't want to put officers into a damned if you do, damned if you don't situation. If I could use just briefly before I sit down a personal example, I was in Judge White's old stomping grounds, the Wayne County Circuit Court in front of Judge Brian Sullivan doing a motion hearing. I passed out on the record talking to the judge and literally went down to the floor. That's a scary judge. Well, frankly, it was my first motion for this firm. I was new. I wanted to really impress him, and I was just stressed. It was a loser case, and I couldn't do anything. The bailiff, Wayne County Sheriff's deputy who's there, was able to grab a chair from the council table, get it under me, grab my shoulder, and put me down in the chair before he hit the floor. But consider what could have run through his mind at that time. Well, if I grabbed his shoulder, I could wrench his shoulder and hurt him. If I let him drop, he could bang his head. Damned if you do, damned if you don't. There were a lot of things that could have gone wrong, but he had to step in and take some action, and I don't think you could hold him as responsible either way it came out. Same thing here. Officer Viviano had a situation where we can look at it with hindsight and say it wasn't very good medicine, perhaps, to do that, but it was not unreasonable in the situation he faced where he was trying to help paramedics in the hospital. What do you do with the contrary facts that are put forward, such as that she wasn't cuffed to the gurney, she was actually on her stomach with her hands cuffed behind her back? Well, either way, that would actually be more effective than cuffing her to the gurney, I think, because that would make it harder for her to move, which would be a far more effective approach, I would think. Okay, but clearly, once you get a person like that in your normal strap restraints, would you leave their hands cuffed? Again, do you want to intervene and make another delay to get those cuffs off? Well, okay, hold on, fellas, before you take her, let me get my cuffs off and go. Just get her on the way, I can get the cuffs off of the hospital. It isn't going to change her position. She's still going to be strapped, cuffed, whatever. She's not moving anywhere. It doesn't alter her position of being confined on this gurney, whether he's left the handcuffs on or not, but it certainly saves time to let her go to the hospital before he intervenes to take them off. When were they removed? They were removed at the hospital. He testified very clearly that they were on the whole trip. If the panel has no further questions, I have nothing to add. We do not. Thank you. Thank you. The only thing I'd like to add to my prior argument is on the objectively reasonable conduct of the defendant. At his deposition, he justified it. Admittedly, he did say she was being uncooperative and falling off the stretcher, he said that, but he also justified it by saying she was kicking one of the EMTs in the groin that she spit on one of the EMTs, which we spent some time in his deposition exploring that issue because it certainly appeared to be one of the motivating factors for why he did this and handcuffed her. It was one of the issues that was raised in the defendant's brief at the trial court level as a basis why this was a reasonable act on his part. At this point in time, it has not been raised by the defendant at this court. I think the reason is because that's clearly a question of fact because I have an affidavit from the son who says I was within my mom's eyesight the entire time of this entire interaction and at no time did she ever kick or spit on any of the EMTs. We have two competing factual issues. So, you know, the judge at the trial court level disregarded the testimony on the affidavit and from the son who said this by saying, well, it could have happened when he wasn't looking. Or assume it happened. I mean, assume that there was no kicking or biting or whatever. It's still uncontroverted, though, that she was not cooperative and she was trying to not be on the gurney. Correct. But, again, the mechanic case says if you're acting in the law enforcement capacity and you see somebody, there's clearly no dispute there's no probable cause here. There's no accusation of crime or that she needed to be seized for a law enforcement purpose. So if he's acting in a law enforcement capacity, then liability attaches. I just think McKenna absolutely holds that. So is it your position that a reasonable officer simply wouldn't have done anything? The reasonable officer may have come in and done some initial things and assisted with the medical side of it, but there's a question of fact as to whether or not this was medical or law enforcement. There's not that he can't do anything. But the handcuffing comes on his own accord. Again, he wasn't asked to do it. No medical personnel came in and said that you need to come in and help us with this woman because we can't control her because she's a danger to us or somebody else. He just simply jumped in after what I would describe as very aggressive law enforcement actions that were leading up to that. It's a question I think the jury needs to answer. Thank you. Thank you. The case will be submitted. Thank you. I call the next case.